Appeal Tax Court of Balt. City *vs.* Gill, &c., Trustees, *et al.*

*Order reversed, &c.*

(Decided 31st January, 1879.)

THE APPEAL TAX COURT OF BALTIMORE CITY *vs.* GEORGE M. GILL, CUMBERLAND D. HOLLINS AND ADOLPHUS C. SCHAEFER, TRUSTEES. SAME *vs.* HARVEY M. ELLICOTT. SAME *vs.* MARGARET P. McELDERRY. SAME *vs.* VICTORIA L. LEVERING. SAME *vs.* GEORGE M. GILL, TRUSTEE OF VICTORIA L. LEVERING. SAME *vs.* MARY C. ALRICKS. SAME *vs.* GEORGE M. GILL, TRUSTEE OF SUSAN L. FITZGERALD. SAME *vs.* GEORGE M. GILL, TRUSTEE OF H. D. C. WRIGHT.

*Taxation of Bonds not secured by Mortgages of Property within this State—Taxation of Public Debts of other States, or of Debts of Corporations created by them, held by Residents of this State, and Taxed by such States—Residence of Trustees holding Bonds or Stock, to fix Situs of Taxation.*

Bonds of the Baltimore and Ohio Railroad Company, and of the Northern Central Railway Company, not alleged to be secured by mortgages upon property within this State, are not embraced in the terms of the exemption contained in the Act of 1876, ch. 260, sec. 1, which exempted from taxation, "mortgages upon property in this State, and the mortgage debts respectively secured thereon."

The power of taxation by this State extends as well to the stocks, bonds and certificates of debt of other States, and of corporations

created by them, and taxed by the States issuing them, or creating such corporations as to those not taxed by such States, whenever such stocks, bonds or certificates of debt are owned by citizens or residents of this State.

Liability to taxation by different governments is no valid reason against the existence of such power, however inexpedient it may be to exercise it.

Where it was conceded that two of the appellees, in the first named case, resided in this State, and the other resided in New York, two-thirds only of the bonds and stocks held by them as trustees should be subjected to taxation in this State.

APPEALS from the Baltimore City Court.

The appeal in the first named case was taken from a *pro forma* order of the Court below, passed on the 1st of July, 1878, in proceedings instituted by the appellees under the Act of 1876, ch. 260, sec. 28, directing the appellant to strike from the list of property assessed and valued to the appellees, as not subject to taxation under that Act, certain bonds of the Baltimore and Ohio Railroad Company and of the Northern Central Railway Company, (which bonds, it was alleged in the petition, represented the share, or part of certain mortgages, on the property of the aforesaid railroad companies, held by the appellees,) of the Schuylkill Navigation Company of the City of Philadelphia, of the Susquehanna Canal Company (which, it was alleged in the petition, was incorporated by this State, but that any value the bonds of the corporation might have, was derived from the guarantee given them by the Reading Railroad Company of Pennsylvania,) and of the Chesapeake and Delaware Canal Company, and certain shares of stock of the Bank of Northern Liberties and of the Farmers' and Mechanics' Bank of Philadelphia, (these being National Banks, not situated in this State, it was conceded by the appellant that their stock was not subject to taxation by this State,) and of the Winchester and Potomac Railroad Company. In the second named case, the appeal was taken from a like order, exempting from taxa-

tion certain mortgage bonds of the Marietta and Cincinnati
Railroad Company, certain bonds of the Alexandria and
Hampton Railroad Company, of the Central Ohio Railroad
Company, of the Susquehanna Canal Company, and of the
Wilmington and Delaware Railroad Company, which
bonds, it was alleged in the petition of the appellee, with
the exception of those of the Susquehanna Canal Company,
are payable by corporations not incorporated by the State
of Maryland. In the third named case the appeal was
taken from a like order, exempting from taxation certain
bonds of the Baltimore and Ohio Railroad Company, and
of the Philadelphia and Wilmington Railroad Company,
and certain shares of stock of the United New Jersey Rail-
road and Canal Company. In the fourth named case, the
appeal was taken from a like order, exempting from taxa-
tion certain bonds of the Marietta and Cincinnati Railroad
Company. In the fifth named case, the appeal was taken
from a like order, exempting from taxation certain bonds
of the Pittsburgh and Connellsville Railroad Company,
and the Steubenville and Indiana Railroad Company. In
the sixth named case, the appeal was taken from a like
order, exempting from taxation certain shares of stock of
the Winchester and Potomac Railroad Company, the Cen-
tral Ohio Railroad Company, and the United New Jersey
Railroad and Canal Company. In the seventh named
case, the appeal was taken from a like order, exempting
from taxation certain bonds of the Baltimore and Ohio
Railroad Company, and the Pittsburg and Connellsville
Railroad Company. In the last named case, the appeal
was taken from a like order, exempting from taxation cer-
tain bonds of the Baltimore and Ohio Railroad Company,
and of the Camden and Amboy Railroad Company. The
cause is further stated in the opinion of the Court.

The causes were argued before BARTOL, C. J., BOWIE,
ALVEY and ROBINSON, J.

Appeal Tax Court of Balt. City *vs.* Gill, &c., Trustees, *et al.*

*A Leo Knott, State's Attorney for Baltimore City,* and *Charles J. M. Gwinn, Attorney General,* for the appellant.

I. Were bonds or obligations of other States, and of municipal corporations incorporated by other States, commonly called the stock or debt of such States and municipalities, subject to valuation and assessment by this State, under the Act of 1876, ch. 260, when owned by persons or corporations having their residence in the City of Baltimore?

Bonds, obligations or evidences of debt, issued by States, municipal corporations, private corporations, or individuals, are all choses in action. They show the right of the respective owners of these securities to demand payment of the interest thereon, as it accrues and becomes payable, and of the principal when it is due, according to the terms of the contract. *Williams on Personal Property,* (4th Am. *Ed.,*) 4. This right is a property, having a value in the market while the interest is maturing and before the debt is due. It is a property, which, because it is a right only of the holder of these securities to demand such interest and principal, as they respectively become due, is personal to the holder of these respective securities, and has, as such right, no other *situs* than the residence of such holder. It does not matter that, by the terms of the contract, the holder of such choses in action is obliged to demand payment of such interest or principal, in a county different from that in which he resides, or in another State. It does not matter that he is required, by the terms of the contract, to assign these securities in a particular manner, or that the registry of such assignment must be made in a particular place. These conditions do not alter the right of property. *Black vs. Zacharie,* 3 *Howard,* 513; *Farmers' Bank of Md. vs. Iglehart,* 6 *Gill,* 56; *Baltimore City Passenger R. W. Co. vs. Sewell,* 35 *Md.,* 252, 253.

They are only precautions intended for the greater safety of the debtor. If the debtor was an individual

residing in another State, and did not pay the interest upon, or principal of, obligations which contained no such provisions, the owner of the securities would be obliged to seek payment in such other State. If he recovered judgment in a Court of such other State, he must, when paid, enter satisfaction of said judgment there. Such circumstances would not change the taxable *situs* of the rights of action which he thus enforced. They would remain, until paid, debts which had no taxable *situs* except the residence of their owner. *Cooley on Taxation*, 65; *Burroughs on Taxation, secs.* 41, 134; *State Tax on Foreign-held Bonds*, 15 *Wallace*, 320; *Latrobe, Trustee, vs. Mayor and City Council*, 19 *Md.*, 22. And, when paid, the money collected would have no other *situs* than such residence of such creditor.

For the same reason, the obligation of a creditor of a State, or municipal corporation, to make demand of the principal or interest of the debt due to him by such State or corporation, at a particular place in such State or city, or at any particular place, does not change the *situs* of that right of making the demand for such interest or principal, which constitutes the taxable value of the chose in action held by the creditor.

It is true that the Supreme Court, in the case of *State Tax on Foreign-held Bonds*, while recognizing the rule that debts, ordinarily, have no *situs*, except the domicile of their owner, treated, apparently, State and municipal bonds as constituting, by general usage, an exception to this rule.

It is conceded that such general usage would create an exception in any case in which it was recognized, or in which it had not been altered by the terms of an express statute. In this State it is not believed that such usage ever obtained. Certainly, if such usage ever existed in our local system it was altered many years since by legislative enactments; and the change thus made has been

steadily adhered to. The General Assessment Acts of March Session, 1841, ch. 23, sec. 1; 1852, ch. 337, secs. 1 and 9; Art. 81, sec. 2 of the Code of 1860; the General Assessment Act of 1866, ch. 157, secs. 1 and 9; the Revenue Act of 1874, ch. 483, sec. 2, and the General Assessment Act of 1876, ch. 260, secs. 1 and 17, subjected, in express terms, to valuation and assessment within this State all public loans and stocks belonging to a resident of this State, except those created, or issued by the United States, and also subjected in express terms to valuation and assessment within this State, all investments in securities or stocks of other States, or of corporations incorporated by other States, belonging to a resident of this State.

Usage, where it exists, creates a local law, which may be changed in the manner in which other local laws are altered, that is to say, by the terms of positive law. *Hammerton vs. Honey*, 24 *Weekly Reporter*, 603, 604; *Jessel, M. R.; Walker vs. Transportation Co.*, 3 *Wallace*, 155; *Brown vs. Jackson*, 2 *Wash. C. C. Rep.*, 25; *Foley & Woodside vs. Mason*, 6 *Md.*, 49, 50; *Appleman vs. Fisher*, 34 *Md.*, 553.

The usage, therefore, to which the Supreme Court refers in the case in 15 *Wallace*, 323, 324, has been qualified and altered by the terms of the positive law of this State and of other States. In this State, the bonds of other States and of municipal corporations incorporated by other States, owned by residents of this State, are treated, for purposes of taxation, as if they were ordinary debts due by non-resident corporations to such residents, and are properly subjected to taxation as the property of the creditors resident in this State in the same manner as if they were ordinary debts due to such residents by non-resident individuals or corporations. As to the rule in other States, see *Cooley on Taxation*, 65; *Burroughs on Taxation*, secs. 41, 134, 432; *Champaign County Bank vs. Smith*, 7 *Ohio*,

Appeal Tax Court of Balt. City *vs.* Gill, &c., Trustees, *et al.*

52, 54; *Hall vs. County Commissioners of Middlesex,* 10 *Allen,* 102; *Webb vs. Burlington,* 28 *Vt.,* 190.

II. Were the bonds, obligations, or certificates of indebtedness of corporations, other than municipal corporations, incorporated by this State, or by other States, when such bonds, obligations or certificates of indebtedness are not secured by mortgage, subject to taxation, under the Act of 1876, ch. 260, when owned by residents of this State?

Such bonds have been declared to be taxable by every General Assessment Act passed since 1841. They are evidences of debts due by such corporations to the owners of such bonds. These debts can have no locality separate from the residence of the parties to whom they are due; and, when owned by residents of this State, must be assessed to such owners in common with other personal property of which they are possessed. *State Tax on Foreign-held Bonds,* 15 *Wallace,* 320.

III. Were bonds, obligations, or certificates of indebtedness of corporations, other than municipal corporations, incorporated by this State, or by any other State, secured by mortgages upon property not within this State, or not wholly within this State, subject to valuation and assessment by this State, under the Act of 1876, ch. 260, when owned by persons or corporations having their residence within this State?

Under the Act of 1876, ch. 260, sec. 1, debts secured by mortgage, due to a resident of this State, were not exempted from taxation, unless the property mortgaged to secure said debts was within this State. It is submitted that such mortgaged property must be *wholly* within this State to exempt such debts from taxation.

Debts, due to a resident of this State, secured by mortgage upon property in this State, or in any other State, would, unquestionably, be subject to taxation as the property of the persons to whom such debts were due, under

the Act of 1876, ch. 260, except for the exemption referred to. The exemption was granted, undoubtedly, for the reason that when the mortgaged property and the mortgaged debt were both taxed, contracts were made between the mortgagor and mortgagee, under which the mortgagor became chargeable with the payment of the taxes upon both the mortgaged property, within this State, and upon the mortgage debt. Such a contract was authorized by law. 1 Code, Art. 64, sec. 4. The Legislature felt that the repeal of the provision legalizing such contracts, would not prevent such contracts from being entered into. It, therefore, met the difficulty by releasing the mortgage debt from taxation, and by contenting itself with the tax on the property covered by the mortgage; treating, in order to relieve the mortgagor, the value of the property mortgaged as the equivalent of the interest held in such property by both mortgagor and mortgagee.

It certainly, therefore, was not the intention of the Legislature to release from taxation any debt, taxable by this State, secured by a mortgage, when the property covered by such mortgage was not wholly subject to taxation by this State; for property, not subject to taxation by this State, did not constitute a basis of taxation, within this State, equivalent in value to the aggregate debts which it secured; and a mortgage on such property was not, therefore, intended by the Legislature to be exempted from taxation.

It is our duty to give this strict construction to the words of the first section of the Act of 1876, ch. 260, exempting from taxation, "mortgages upon property in this State, and the mortgage debts respectively secured thereon." *Gordon's Exr. vs. Mayor and City Council of Baltimore*, 5 *Gill*, 237, 238; *Mayor and City Council vs. Baltimore and Ohio R. R. Co.*, 6 *Gill*, 292; *Mayor. &c. vs. State*, 15 *Md.*, 391, 392, 467; *County Commissioners of Anne Arundel County vs. Annapolis and Elkridge R. R. Co.*, 47 *Md.*,

Appeal Tax Court of Balt. City *vs.* Gill, &c., Trustees, *et al.*

612; *Buchanan vs. County Commissioners,* 47 *Md.,* 293; *Providence Bank vs. Billings,* 4 *Peters,* 561; *Ohio Life Insurance Co. vs. Debolt,* 16 *Howard,* 435; *Jefferson Bank vs. Skelly,* 1 *Black,* 446; *Delaware Railroad Tax,* 18 *Wallace,* 226; *North Missouri Railroad Co. vs. Maguire,* 21 *Wallace,* 61; *Tucker vs. Ferguson,* 22 *Wallace,* 575; *See also Act of* 1878, *ch.* 413, *sec.* 2.

IV. Were shares of stock in corporations, other than municipal corporations, not incorporated by this State, subject to valuation and assessment by this State, under the Act of 1876, ch. 260, when owned by persons or corporations, having their residence in the City of Baltimore?

The properties within this classification were expressly included in the designation of property made taxable by the Assessment Act of 1841, ch. 23, sec. 1; by the Assessment Act of 1852, ch. 337, secs. 1 and 9; by the Code of 1860, Art. 81, sec. 2; and by the Assessment Act of 1866, ch. 157, secs. 1 and 9; by the Revenue Act of 1874, ch. 483, sec. 2, and by the Assessment Act of 1876, ch. 260, secs. 1 and 17. The General Assembly has, therefore, clearly expressed its opinion and will upon this particular question at intervals extending over a period of forty years. The Revenue Act of 1874, ch. 483, sec. 2, and the Assessment Act of 1876, ch. 260, secs. 1 and 17, were passed only in the continued execution of a settled policy, and in the exercise of powers which had been for many years steadily asserted. *State vs. Mayhew,* 2 *Gill,* 497. These Acts of the Legislature are presumed to be constitutional; and unless they manifestly infringe some provision of the Constitution of this State, or of the United States, they cannot be declared by the Courts to be invalid. *Davis vs. Helbig,* 27 *Md.,* 462; *Groff vs. Mayor, etc. of Frederick City,* 44 *Md.,* 78.

A corporation, incorporated by another State, is a resident of such State only: *Bank of Augusta vs. Earle,* 13 *Peters,* 588; *Ohio and Mississippi R. R. Co. vs. Wheeler,* 1

*Black*, 295, 297; and must be treated as a natural person would be who resided in such State. *Louisville R. R. Co. vs. Letson*, 2 *Howard*, 555.

It is the sole owner of the franchises and capital of the corporation, and of the property, real, personal and mixed, in which that capital is invested, and which are held in its corporate name and by its corporate title; and such property, according to its nature, may be valued and assessed to the corporation owning it, in the State in which such corporation resides, in the same manner in which such particular properties would be assessed to individuals, if they were the owners thereof. *Gordon vs. Appeal Tax Court*, 3 *How.*, 150; *Calcutta Jute Mills Co. vs. Nicholson, Law Rep.*, 1 *Ex. Div.*, 444, 448; *Cesena Sulphur Co. vs. Nicholson, Law Rep.*, 1 *Ex. Div.*, 453, 454.

If such corporation has a capital stock, divided into shares, owned by individuals, such individual shareholders are not the owners of any portion of the corporate property or franchise: *Regina vs. Arnaud*, 9 *Ad. & E., N. S.*, 806, 817, (58 *E. C. L. R.*, 816;) *Watson vs. Spratley*, 10 *Exch.*, 35, 238; *Cesena Sulphur Co. vs. Nicholson, Law Rep.*, 1 *Exch. Div.*, 451; and certainly the corporation is not the owner of the shares belonging to the individual shareholders.

The shareholders have a right to participate in the net profits of the corporation, as ascertained from time to time, in proportion to the number of their shares in the corporate stock. They have a right, in case of the dissolution of the corporation, to a share in its assets remaining after payment of its debts, proportioned to their ownership of its shares of stock. But, while the corporation remains in being, they are not owners of any part of the corporate franchises or property. *McCulloch vs. Maryland*, 4 *Wheat.*, 436; *Dartmouth College vs. Woodward*, 4 *Wheat.*, 700, 701; *Gordon vs. Appeal Tax Court*, 3 *Howard*, 150; *Van Allen vs. Assessors*, 3 *Wall.*, 584; *Delaware Railroad Tax*

*Case,* 18 *Wall.,* 229, 231; *Farrington vs. Tennessee,* 95 *U. S.,* 686, 687, 691; *Dewing vs. Perdicaries,* 96 *U. S.,* 196; *Regina vs. Arnaud,* 9 *Ad. & E., N. S.,* 806, 817, (58 *E. C. L. R.,* 816;) *Watson vs. Spratley,* 10 *Exch.,* 235, 238. The right, while the corporation remains in being, to receive their proportionate share of the net profits of such corporation, is their sole and exclusive right. It is not shared with the corporation. It belongs to the stockholders as stockholders only. This right is an actual property, having a market value, which, whether it is to be termed a *chose in action* or not, is as much the exclusive property of the shareholders as any other property belonging to him. *Ex parte Union Bank of Manchester,* 12 *Eq. Cas.,* 357; *Williams on Personal Property,* (4th Am. Ed.,) 6.

The property, owned by a shareholder in a corporation, is so different and distinct from the property owned by the corporation, that its distinctive character is not affected by the nature of the property of the corporation. The property of the corporation may be wholly real estate. The shares of its stock are personal property only. *Ex parte Union Bank of Manchester,* 12 *Equity Cases,* 357; *Shelford on Joint Stock Companies,* (2d Eng. Ed.,) 147; *Myers vs. Peregal,* 2 *De Gex, Mac. & Gord.,* 618, 621; *Hilton vs. Giraud,* 1 *De Gex & Smale,* 83; *Ashton vs. Lord Langdale,* 4 *De Gex & Smale,* 402; *Taylor vs. Linley,* 2 *De Gex, Fisher & Jones,* 84; *Hayter vs. Tucker,* 4 *Kay & Johnson,* 243; *Sparling vs. Parker,* 9 *Beav.,* 450; *Walker vs. Milne,* 11 *Beav.,* 507.

The necessary conclusion would seem to be, that shares in a corporation, incorporated by another State, owned by residents of this State, constitute a separate and special property, belonging to the respective shareholders, wholly distinct from the capital of the corporation, and from the property in which that capital is invested. *Emory vs. State,* 41 *Md.,* 58.

The most complete proof that the property belonging to the corporation, and the shares in such corporation in the

hands of the holders of such shares, are distinct and separate properties, is the conclusion reached by the Supreme Court of the United States in the recent case of *Farrington vs. Tennessee*, 95 *U. S.*, 687, that the property of a corporation and the shares of a corporation may both be taxed in the hands of their respective owners, by the State in which such corporation has its *situs*, and in which also such shareholders reside, and that such taxation is not double.   In that case it was declared to be "settled beyond doubt," that a tax upon a corporation was a different thing from a tax upon the individual shareholders of stock in the corporation; that the property of the corporation, and the shares of stock of that corporation in the hands of stockholders were different properties, and were consequently distinct subjects for taxation; and that an exemption of the one was not of itself an exemption of the other, nor the taxation of the one a tax upon the other in such a sense as to interfere with any exemption the latter might have from taxation.   The ruling, thus made, has been affirmed in the recent case of *Dewing vs. Perdicaries*, 96 *U. S.*, 196.

. If shares of stock in a corporation, incorporated by this State, owned by a shareholder residing in this State, constitute a property separate from that owned by the corporation, and are liable to taxation as the property of such shareholder, whether the property of the corporation be taxed by this State, or not, it certainly follows that shares of stock in a corporation incorporated by another State, are, when owned by a resident of this State, liable to taxation by this State, whether the property of such non-resident corporation be taxed by the State in which it has its *situs*, or not.   *Keyser vs. Rice*, 47 *Md.*, 211, 212 ; *Latrobe, Trustee vs. Mayor and C. C. of Baltimore*, 19 *Md.*, 13 ; *Farrington vs. Tennessee*, 95 *U. S.*, 686, 687, 691, 692 ; *Dewing vs. Perdicaries*, 96 *U. S.*, 196 ; *Van Allen vs. Assessors*, 3 *Wall.*, 584 ; 1 *Redf. Am. R. W. Cases, Sup.*, 503, 504 ; *State*

*vs. Branin,* 3 *Zab.,* 507; *State vs. Bentley,* 3 *Zab.,* 341; *Newark City Bank vs. Assessors,* 30 *N. J.,* 20; *Cooley on Taxation,* 15, 16, 274; *Burroughs on Taxation,* 188; *Dwight vs. Mayor of Boston,* 12 *Allen,* 316, 322; *Howell vs. Cassapolis,* 35 *Mich.,* 472; *City of Evansville vs. Hall,* 14 *Indiana,* 27; *Angell & Ames on Corp.,* (8th Ed.,) secs. 560–564.

When a corporation has its *situs* in another State, and the shareholders of such corporation reside in this State, the taxation by the other State of the corporate property, and by this State of the shares in that corporation, owned by persons residing in this State, is not a circumstance upon which the Courts of either State can found an objection. Such taxation cannot be objected to as double taxation. The theory that taxation of the property of a corporation, and also of its shares, is double taxation, has no application except to a case where the *situs* of the property of such corporation, and the *situs* of the ownership of its shares of stock, are both in one State, and both properties are taxed for the same object and by the same authority in such State. Taxes, which are imposed by different authorities, are not objectionable upon any theory of double taxation, even if the taxes thus imposed affect the same property. Municipal taxes are not unconstitutional, because they affect property already taxed for State purposes. Federal direct taxes, laid under Art. 1, sec. 8, of the Constitution of the United States, would not be unconstitutional, although they would certainly be imposed upon property already subject to State and municipal taxation. Taxes imposed by different States, upon the same property, could not be accounted double taxation. And certainly taxes imposed by different States upon properties different in nature, however connected by relation to each other, cannot be accounted double taxation.

The *situs* of the corporation does not determine the *situs* of the shares of such corporation for the purposes of tax-

ation. ' Such shares represent only the right of the share-holder to receive an *aliquot* portion of the net profits of the corporation; and being rights of property wholly personal to the shareholder, can have, as property, no *situs* except the residence of such shareholder. See cases last cited.

The register of shares in the principal office of a corporation does not create a *situs* for such shares as taxable property. That book is only a record, kept for the security of the corporation, to afford evidence of the ownership of such shares. A transfer upon the registry is not necessary to divest the title of the owner of shares of corporate stock. The property in such shares is so completely vested in the owner, that his transfer of them, by a proper instrument, operates of itself to divest his title and to give to his transferee a right to demand a new certificate. *Bank vs. Zacharie,* 3 *How.,* 513; *Farmers' Bank vs. Iglehart,* 6 *Gill,* 56; *Baltimore City Passenger Railway Co. vs. Sewell,* 35 *Md.,* 252, 253; *Agricultural Bank vs. Burr,* 24 *Maine,* 254; *Angell & Ames on Corp.,*.(8th Ed.,) *sec.* 565. The register is only one of the *indicia* of title. *Dewing vs. Perdicaries,* 96 *U. S.,* 196.

The thirteeenth Article of the Declaration of Rights, prefixed to the Constitution of 1776, was agreed to in the Provincial Convention of Maryland, on November 3rd, 1776. *Proceedings of Maryland Conventions,* 310–312. It read as follows:

"13. That the levying taxes by the poll is grievous and oppressive, and ought to be abolished; that paupers ought not to be assessed for the support of government; but every other person in the State ought to contribute his proportion of public taxes for the support of government, according to his actual worth in real or personal property within this State; yet fines, duties or taxes may properly and justly be imposed or laid with a political view for the good government and benefit of the community."

It will be seen that the Article thus cited is substantially identical with the fifteenth Article of the Declaration of Rights, prefixed to the Constitution of 1867. The levying of taxes by the poll, imposed by the Provincial Acts of 1715, ch. 15, sec. 3, and by the Act of 1725, upon all persons in the colony, except beneficed clergymen and paupers actually supported by the counties in the Province, was practiced in the Province of Maryland from 1715 to 1776. It was a method of raising revenue always objectionable to the Colonists, and it was, therefore, denounced in this thirteenth Article when they were about to organize a new form of government for themselves. The assessment of paupers for the support of government, whether they received alms or not, was wholly useless; and such imposition was also condemned. But whence was derived the next succeeding clause in the Article referred to, which declared that every other person in the State ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in real or personal property?

The Inquiry into the Nature and Causes of the Wealth of Nations, by Adam Smith, was published in 1776. We may certainly assume that it was given to the world early in 1776, because Thomas Pownall published a review of the work in the same year. In the work of Adam Smith, when treating of taxes, he states four general maxims, applicable to them, which he considers to be indisputable.

The first maxim thus stated was as follows: "The subjects of every State ought to contribute towards the support of the government, as nearly as possible, in proportion to their respective abilities, that is, in proportion to the revenue which they respectively enjoy under the protection of the State." It would seem, upon reading this maxim, that there could be but little doubt as to the source from which the particular portion of the thirteenth original Article of the Bill of Rights, upon which we are comment-

ing, was derived; nor would it seem that the words of the Article, the source from which it was derived, and the whole context of the work in which it is contained, leave any doubt that the theory which was intended to be inculcated was, that the payment of taxes was a personal duty, imposed by law upon every resident of this State, to be measured, in its performance, by the actual worth, in real or personal property, of the person who was required to make such payment.

If the theory of the Article referred to was, that taxes were to be imposed on property only, and not on persons, there was no reason to denounce the levying of taxes by a mere *per capita* standard, or to say that paupers ought not to be assessed for the support of the government. The exceptions thus made, taken in connection with the meaning, which the words in the Article bore, when they formed a part of the text of the author from whom they were plainly borrowed, would seem to demonstrate that the true theory of our Constitution is, that it imposes on every person in this State who is possessed of property within this State, taxes measured by the value of such property. This would seem to be the meaning which this Court gave to the Article in question, in *Latrobe vs. Mayor and City Council,* 19 *Md.,* 21, and in *Firemen's Insurance Co. vs. Mayor,* 23 *Md.,* 311, 312. It is a meaning made very clear by the reasoning of Judge AGNEW in *Kittaning Coal Co. vs. Comm.,* 79 *Penna. St.,* 104, 105. It is a meaning which the cases of *Mayor of Baltimore vs. Howard,* 6 *H. & J.,* 383; *Dugan vs. Mayor of Baltimore,* 1 *G. & J.,* 499; *Clemens vs. Mayor of Baltimore,* 16 *Md.,* 208, and *County Commissioners of Frederick County vs. Clagett,* 34 *Md.,* 210, would seem strongly to support, when they recognize *indebitatus assumpsit* as the remedy proper for the recovery of such taxes; because the *indebitatus assumpsit* count, applicable, in general, only to the recovery of debts, and where a common action of debt might have

been sustained, (1 *Saund. Plead. and Ev.*, 181,) imports always that it is founded upon a *personal* obligation expressed or implied to pay the money which is claimed. 1 *Chitty on Plead.*, m. 334.

Originally "levying taxes by the poll," meant not only the taxing of persons by the head, but included also the taxing of horses, cattle and other domestic animals, which by several ancient Acts of Parliament were taxed *per capita*, without regard to their actual value; against which system of taxation as "being grievous and oppressive," frequent remonstrances were made to the House of Commons. *Camden's Hist. Q. Eliza.; Hume's Hist. Eng., temp. Edw. VI, note Q.*

*John Gill, Jr.*, and *George M. Gill*, for the appellees.

The appellees in these cases contend, that where a foreign corporation owns property in States other than Maryland, such property is liable to be taxed in such State, where such taxes are levied and paid by the corporation in question, as is believed to be the fact in respect to all the property mentioned in the petitions in these cases. Such taxes must unquestionably diminish the interest of all the stockholders, no matter where residing, that for this State to impose a tax upon the stockholders residing here, must, as far as they are concerned, amount to a double tax; and, therefore, cannot legally be imposed by this State; and this is especially true where the State in which the foreign corporation exists, may tax either the property of the corporation, or the shares of stock representing the said property of the company in the hands of the shareholder.

The system of taxation as attempted to be enforced in these cases, is contrary to the Bill of Rights, which declares that every man should be taxed according to his actual worth, in real and personal property, and that so far as the assessment law violates the Bill of Rights, it is essen-

tially wrong and unconstitutional. To take the case of mortgages, either all mortgages, irrespective of location, in or out of the State, should be taxed, or no mortgages should be taxed. *Burroughs on Taxation,* 65, *sec.* 53; *Cooley on Taxation,* 127, 130; 10 *Wis.,* 242; 45 *Md.,* 377; 19 *Md.,* 22; 40 *Md.,* 22; 11 *Louisiana Annual,* 739; 15 *Wall.,* 324, 325; 40 *Md.,* 273.

The exemptions from taxation in the assessment law, are in violation of the Bill of Rights, and do not carry out its spirit and object, which was to make all property in Maryland equally responsible for taxation.

Taxation and protection go hand in hand, and without protection there can be no proper taxation. In Maryland, at least, double taxation can never be justified. By the decision in the *Tax Cases,* 12 *G. & J.,* it was held, that this State could tax all stockholders of corporations in this. State, whether they resided here or elsewhere, upon the ground that this State protected their property in this State; the practice in Maryland for the last half century has been to charge the foreign holder of Maryland stock, and City of Baltimore stock, with the same rate of tax as is charged residents of Maryland, showing that protection of the property, and not of the person, was the true standard of taxation.

It is conceded that in the case of the *Appeal Tax Court vs. Gill, Hollins and Schaefer, Trustees,* only two of the trustees named owning the personal property assessed to them resided in the City of Baltimore, or State of Maryland, at the time the assessment was made, and only the same two reside in the said city or State at this time, the third trustee then and now being a resident of the State of New York. It is therefore contended that only two-thirds of the aforesaid property in any event could be assessed or taxed in, by or under the laws of this State. *Mayor, &c. vs. Stirling & Ridgely, Trustees,* 29 *Md.,* 48.

BOWIE, J., delivered the opinion of the Court.

. The appellees in the *Appeal Tax Court vs. Gill, et al., Trustees,* insist that the *bonds* of the Baltimore and Ohio Railroad Company, and the Northern Central Railway Company, are exempt from taxation, because they represent the share or part of certain mortgages on the property of the aforesaid railroads, held by the appellees; and also that the other property assessed consists of stocks and bonds of institutions and corporations, not incorporated under the laws of this State, not doing business in this State and not having a *situs* in this State, and not having any of their property in this State; and also, that they are incorporated by, and situated within the jurisdiction of other States, *and are liable to, and pay their taxes to the same.*

By the Act of 1876, ch. 260, entitled "An Act for the general valuation and assessment of property, in this State," "all investments in private securities of every kind, nature and description, belonging to residents of this State, except mortgages *upon property in this State,* and *the mortgage debts respectively secured thereon,* and all property of every kind, etc., shall be liable to valuation, assessment, and taxation, except as provided in the next ensuing section of this Act."

It is not alleged, that the bonds for which exemption is claimed, are secured by mortgage, upon property within this State; but, it is admitted, that the mortgages, securing the same, include property both within and without the State. Without inquiring into the reason of the discrimination between mortgages on property within the State, and those on property without, it is sufficient to say, the bonds assessed in this case do not come within the terms of the exemption; and it is an unyielding rule of law, that exemptions claimed under legislative Acts, should be rigidly construed and established beyond rea-

sonable doubt. 5 *Gill,* 237 ; 6 *Gill,* 292 ; *County Commissioners of A. A. Co. vs. A. & E. R. R.,* 47 *Md.,* 612. Since it has been decided by this Court, in *Appeal Tax Court vs. Patterson, ante p.* 354, that the State has the power to tax stocks, bonds, and certificates of debt of other States, and of corporations created by them, exempted from taxation by the State issuing them, or creating the corporation, when held by citizens or residents of this State, it follows, of course, that the same power of taxation extends to the stocks, bonds, and certificates of such States, and of corporations created by them, held by citizens or residents of this State, not exempted, and to those which are, or may be taxed, by the States issuing the same, etc.

Liability to taxation by different governments is no valid reason, against the existence of such power, however inexpedient it may be to exercise it.

These propositions determine in a great measure, if not entirely, the appeals in the *Appeal Tax Court of Baltimore City vs. Gill, et al., Trustees; Same vs. Ellicott; Same vs. Mc-Elderry ; Same vs. Levering ; Same vs. Gill, Trustee of Levering ; Same vs. Alricks ; Same vs. Gill, Trustee of Fitzgerald,* and *Same vs. Gill, Trustee of Wright,* in all of which, bonds and stocks, subject to assessment and valuation, have by the orders of the Court below passed in these several cases, been exempted.

In the case of the *Appeal Tax Court vs. Gill, Schaefer and Hollins, Trustees,* it being conceded that two of the trustees reside in this State, and one in New York, two-thirds of the property only should be assessed, in accordance with the decision of this Court, in the case of *The Mayor, &c. vs. Stirling & Ridgely, Trustees,* 29 *Md.* ,48, 49.

For the reasons assigned in the opinion of this Court in the case of the *Appeal Tax Court of the City of Baltimore vs. Elizabeth Patterson,* as well as those subjoined in the *Appeal Tax Court vs. Gill and others,* the orders appealed from in *The Appeal Tax Court of Baltimore City vs. Gill*

Phila., Wilm. and Balt. R. R. Co. *vs.* Appeal Tax Court of Balt. City.

*and others, Trustees; Same vs. Ellicott; Same vs. McEl-
derry; Same vs. Levering; Same vs. Gill, Trustee of Lever-
ing; Same vs. Alricks; Same vs. Gill, Trustee of Fitzgerald,
and Same vs. Gill, Trustee of Wright,* will be reversed.

*Order reversed, and
records remanded.*