Pittsburgh School District et al., Appellants, *v.* E. S. S. Land Company.

Argued May 1, 1940.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES
and HIRT, JJ.

*N. R. Criss,* for appellants.

*David M. Harrison,* for appellee.

OPINION BY KELLER, P. J., July 19, 1940:

Scire facias sur lien or claim for school taxes in the City of Pittsburgh.

In 1924 the appellee (Defendant) acquired a tract of land in the Borough of Overbrook, Allegheny County. This land was assessed by the Board of Assessment and Revision of Taxes of Allegheny County as "6.75 acres of land Saw Mill Run Boulevard corner Englert Street". In 1927 a tract of .95 of an acre of this property was dedicated to the Borough of Overbrook for the purpose of eliminating a dangerous traffic condition and giving access to the tracks of the Pittsburgh Railways Company. This was at the request of the county commissioners and the borough council. The improvement resulted in the general enhancement of value of the neighboring properties.

In 1930 the Borough of Overbrook, including the

tract here in question, became part of the City of Pittsburgh. School taxes in the City of Pittsburgh are levied on the basis of assessments furnished the school board by the Board of Assessors of the City of Pittsburgh: Act of May 18, 1911, P. L. 309, secs. 525-527. When the incorporation of the borough into the city took place the board of assessors adopted the description of the county board (a different board entirely) so that the property was still described in the assessors' records as a tract of 6.75 acres, although .95 of an acre of this tract had been dedicated to public use. The assessment was $54,000.

In none of the years here in question was an appeal taken by appellee, nor were the taxes paid. In 1936, however, the appellee, being desirous of taking advantage of a tax abatement act, applied to the Board of Assessors of the City of Pittsburgh for a "correction" of the assessment of this land for the years 1931 to 1934, inclusive, arguing that an error had been made in the original assessment by the city board in following the description contained in the county board's records. The appellee's position was that the valuation of this property was based on a rate of $8000 an acre and that since the acreage had been reduced the assessment was too high. The Board of Assessors "corrected" the assessment for the four years in question, reducing the total valuation for each year by $7600, i. e., the value of .95 of an acre at $8000 an acre, and sent memoranda of the changes to the school board.

The school board claimed that this reduction could not affect taxes for the past years, and demanded the full amount of the original levy. The appellee has paid for the year 1934 (the only one involved in this appeal) all school taxes except $85.50 which represents the amount of tax on $7600.

The school district and the board of public education of the school district filed a lien against the property

for this amount plus penalty and interest. The appellee, pursuant to the Act of May 16, 1923, P. L. 207, sec. 16, notified the school authorities to issue a sci. fa., and this was done. In it the school district averred that the tax was duly assessed and levied against, inter alia, "5.8 acres Dartmore corner Englert Street" and was unpaid. The appellee filed an affidavit of defense denying this in general terms, and under New Matter set out the facts outlined above. Appellant moved for judgment on the record, but, after argument, judgment was entered for the appellee. The judgment is assigned as error.

The result reached by the lower court is incorrect and must be reversed, as the affidavit of defense does not present a good defense to the tax claim sued on. The case of *Philadelphia v. Phillips,* 65 Pa. Superior Ct. 578, is almost exact authority for appellant's position here. In that case, the property, described as a tract of 59 acres, was assessed for 1911 at $65,000. No appeal was taken, so far as appeared in the record. A survey in December, 1911, showed the true area to be 42.7399 acres, and the taxpayer applied to the board of revision of taxes for a reduction in assessment because of the "error". That board, which also had the power "to rectify all errors" (Act of March 14, 1865, P. L. 320, sec. 1), refused the reduction for 1911 and prior years, and the taxpayer did not appeal. A sci. fa. was issued on the tax lien and an affidavit of defense was filed alleging that the property had been assessed at $65,000, or $1101.69 an acre, and that the assessment should have been 42.7399 times $1101.69. Credit on the lien was claimed in an amount representing the tax on the difference between $65,000 and the lower figure. Judgment for want of a sufficient affidavit of defense was entered on the ground that the taxpayer's remedy, in such a case, was by appeal only. This was affirmed, largely on the lower court's opinion, in which it was said, (p. 584) "If a right to attack an assessment collaterally for a

mistake in dimensions or quantity exists, it is without limitation, and every assessment could be severally collaterally attacked, however trifling the discrepancy".

The only difference between *Philadelphia v. Phillips,* supra, and the present case, is that in this one, the board of assessors did attempt to change the assessment in spite of the failure to appeal within the proper time. This is not a substantial difference because after the time for appeal to the board in its appellate capacity has passed, a later "application" to the Board to lower the assessment is a collateral attack.

If the tax for 1934 is too high it is attributable to nothing but appellee's own inaction. It must be assumed that tax notices were sent out at the proper times, and although it may not have known that the tract was still described as 6.75 acres in the assessors' records, it would have found it out if it had looked, and it certainly knew whether or not it considered the assessment too high. If it thought that it was, its recourse was by appeal, but instead of availing itself of that remedy it sat supinely by and watched the unpaid taxes mount. It is too late now to assert invalidity of the tax. See the very pertinent discussion in *Wilson v. Phila. School District,* 328 Pa. 225, 243-246, 195 A. 90, in which it was decided that the delinquent taxpayers had lost, by inaction, the right to object to the constitutionality of a tax statute that had been in force for some years during which the school board had incurred debts in part reliance on these anticipated taxes. The right to object to the constitutionality of a statute is certainly no less fundamental than the right to appeal, and if the former can be lost so can the latter.

The appellee could have appealed from the assessment by the board to the board in its appellate capacity under the board's rules (Act of July 9, 1897, P. L. 219, sec. 2) and from there, if necessary, to the court of common pleas, within thirty days (Act of 1897, supra) and from there to an appellate court (Act of June 26, 1901,

P. L. 601, sec. 1; Act of June 12, 1931, P. L. 547; Act of May 22, 1933, P. L. 853, sec. 519). Having failed to take the initial appeal to the board in its appellate capacity it lost the further rights to appeal; *Philadelphia Company's Petition*, 210 Pa. 490, 492, 493, 60 A. 93; *Philadelphia v. Phillips*, supra. It is difficult to see what defenses other than payment or total lack of jurisdiction to levy a tax can be raised to a sci. fa. under the Act of May 16, 1923, P. L. 207, when the claim sued on is a tax rather than a claim for improvements. The cases cited under 53 PS §§ 2038, 2039 are almost all under prior acts and concern, almost exclusively, claims for improvements, where other defenses would naturally be available.

We have here an appraisal of a certain tract of land at $54,000, which tract is described in the assessors' records as a tract of 6.75 acres. The fact that this lump sum is an amount which, when divided by 6.75, happens to equal $8000 an acre does not necessarily mean that the assessors would have valued the tract at a less figure if they had known the true area. This is especially true in the absence of a showing that the usual method of assessing in that section of Pittsburgh is by the acre. If the appellee has any ground for complaint it is because of over-assessment, for which his only remedy was appeal: *Moore v. Taylor*, 147 Pa. 481, 484, 23 A. 768; *Clinton School District's Appeal*, 56 Pa. 315, 317; *Philadelphia Company's Petition*, supra; *Dougherty, Trustee v. Philadelphia*, 314 Pa. 298, 301, 171 A. 583.

The action by the board of assessors does not help the appellee as to past years because that board did not have the power to make this change in assessment retroactive. In *Coal & Iron Co. v. County Commrs.*, 229 Pa. 460, 464, 79 A. 109, it is said: "All authorities having to do with the valuation and assessment of lands and the levy and collection of taxes must look to the statutes dealing with the subject for their authority to act." The authority is said to be found in the board's

"duty to rectify all errors" in the following Act of July 9, 1897, P. L. 219, sec. 2 (53 PS §9991):

"The present board of assessors in any such city, or their successors when elected, shall make an assessment of all the subjects of taxation now by law, or which may hereafter be made subject to taxation for city purposes, and they shall take, as the basis of such assessment, the last preceding assessment made by the board of assessors for such city, and shall have power to revise, equalize or alter such assessment by increasing or reducing the valuations, and to add to such lists of assessments any subjects of taxation subject to taxation as aforesaid omitted therefrom, and fix the taxable valuation thereof; and it shall be their duty to rectify all errors, and, if necessary for such purpose, require the attendance of citizens before them for examination under oath or affirmation. It shall be their duty to establish, without delay, rules and regulations prescribing the mode of appeal to them from any assessment made by them by any person interested therein, and when such assessors shall have finally acted upon such assessments and appeals, an appeal may be taken therefrom to any court of common pleas of the county in which such city is located, whose decision shall be final thereon. Such appeals shall be taken to such court within thirty days after final action by the assessors as aforesaid."

The errors referred to in this act are obviously mechanical errors and not errors of judgment. It is quite proper that the board should have power to correct arithmetical errors, errors in copying names or figures, a listing of A's assessment under B's name, the assessment against A of property not owned by him, etc. The very helpful brief of appellant informs us that such errors (but not alleged over-assessment) are corrected by the assessors and the school board in the manner attempted to be used here, that is, the board of assessors makes the correction on its records and sends a

certificate of the change to the school board, which then decides for itself whether the change will be made by it for past years. It is clear that the power "to revise, equalize or alter such assessment" in the section quoted above refers only to the current year's assessment lists then under consideration, and cannot be invoked here.

Even if this were the rectification of an error, it would take the consent of the school board to make it effective to reduce taxes properly levied for former years. The power to change assessments or to rectify errors is not the same as the power to relieve a taxpayer of the duty of paying all or part of a tax duly levied by the proper authorities. The total assessed valuation of property is determined by the assessors and certified to the school directors (Act of May 18, 1911, P. L. 309, sec. 526), but it is the school board which levies the tax (Act of May 18, 1911, P. L. 309, sec. 524, as amended, 24 PS § 562). It would be anomalous indeed, if a tax levied by the school board could be reduced by the board of assessors whose assessment was relied on in arriving at the tax rate necessary to meet the anticipated expenditures of the district.

If there were error in the assessment (as distinguished from error in the description) we can assume without deciding that the *school board* would have *power* to reduce the amount of the tax. See "Exoneration from Payment of School Taxes" (Opinion of Attorney General), 19 D. & C. 213. Since the school board has refused to lower the amount, the question is not whether it has the power to reduce it, but whether the taxpayer can, by means which are very close to mandamus, force it to do so. It is well settled that mandamus would not lie here: *James v. The Commissioners of Bucks County*, 13 Pa. 72; *School Directors of Bedford Borough v. Anderson*, 45 Pa. 388. In the latter case, it is said at page 390, "Exoneration is a discretionary power incidental to their [school directors'] office, and in this instance would seem to have been exercised by a re-

fusal to grant the relief asked for. We have no power to control a discretion vested in them, and no appeal lies from them to judicial tribunals." This was under the Act of May 8, 1854, P. L. 617, sec. 31.

The only cases cited by the court below are *Williamson's Estate,* 153 Pa. 508, 26 A. 246, and *Quemahoning Coal Co. v. Jenner Twp.,* 83 Pa. Superior Ct. 577. In the former, the holding was that the assessment of personal property made by an assessor and altered by the board of revision must stand, although it later appeared that the assessment was much too low. The part cited by the lower court is a dictum to the effect that *mistakes* can be corrected by the board until the taxes are paid. In the Quemahoning case, the reason for the decision was that the procedure in the assessment was improper, and not that the assessment was too high. No additional cases are cited by the appellee.

The judgment is reversed and the record is returned to the court below with directions to enter judgment against the defendant for such sum as to right and justice shall belong unless other legal or equitable cause be shown to the court below why such judgment should not be so entered (Act of April 18, 1874, P. L. 64).