Courlaender's Estate.

Argued October 11, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

476

*Abraham Wernick,* Assistant City Solicitor, with him *Francis F. Burch,* City Solicitor, for appellant.

*Charles B. Joy,* for appellee.

OPINION BY KELLER, P. J., February 28, 1941:

M. Isabella Courlaender, a resident of Philadelphia, died on August 21, 1927, having made her last will and testament which was duly admitted to probate by the Register of Wills of Philadelphia County on September 14, 1927. By her will she created a trust fund for the benefit of her daughter, Elise Courlaender Newbold, during her lifetime, with remainder over at her death.

She appointed her daughter, Elise Courlaender Newbold, a resident of Philadelphia, Charles B. Joy, also a resident of Philadelphia and attorney for the estate, and the Camden Safe Deposit & Trust Company of Camden, N. J., the executors of and trustees under her will, and letters testamentary were duly issued to them.

The testatrix authorized, but did not direct, the executors and trustees to keep the physical custody of the assets of her estate within the State of New Jersey, "if they so desire". By their concurrence they were kept in the vault of the Camden Safe Deposit & Trust Company.

In November, 1938 the trustees filed in Philadelphia County, Pennsylvania, a return of the property in their hands belonging to said trust which they considered taxable under the Act of June 17, 1913, P. L. 507 and its amendments and supplements, amounting to $47,-295.50—valued as of November 17, 1938—"Less 1/3 for

Foreign Trustee, $15,765.16", leaving a total subject to tax for the County of Philadelphia of $31,530.34, on which a personal property tax of four mills was duly assessed in 1939 for the county of Philadelphia for that year.

The same course had been pursued for at least the five preceding years.

On January 3, 1939 the Supreme Court of this Commonwealth handed down its decision in *Dorrance's Est.*, 333 Pa. 162, 3 A. 2d 682, in which it was held that, in the circumstances there present, the trust property, which was held and administered in New Jersey was not subject to the four mills State personal property tax assessed by the Department of Revenue under the Act of June 22, 1935, P. L. 414, 72 PS §3242 et seq., or any fraction thereof, even though three of the four trustees resided in Pennsylvania because the will indicated an intention that the trust should be administered in New Jersey, the domicile of the fourth and corporate trustee, and none of the duties of the trustees was performed in Pennsylvania.

Following this decision there was ample time for the trustees under Mrs. Courlaender's will to appeal from the county personal property tax assessed pursuant to and in accordance with the trustees' return, if they deemed that the decision in *Dorrance's Est.*, supra, applied to their trust estate and relieved it of taxation in Pennsylvania. The taxing authorities had no reason to know or think that the personal property returned by the trustees for taxation in Pennsylvania was not taxable.

The Act of April 28, 1937, P. L. 480, relating to tax assessments in counties of the first class, which was in force and effect when the personal property return in this case was filed, provided for the assessment of all 'objects of taxation' according to the actual value thereof, and in section 4 directed that in each year the board of revision of taxes should take an account of all per-

sonal property taxable by law, together with a just valuation thereof. It provided (sec. 6) that when the assessment was made the board should prepare a statement in such form as would show the assessed values of all property within the county, which might be in book form and should be made available for public inspection; and (sec. 7) when the times for the meetings of the board of revision of taxes to hear appeals have been fixed [by rule of the board duly advertised] the board should give at least five days' printed or written notice to each taxable of the amount or sum for which he stood rated by reason of any changes in his assessment for any cause, together with the time and place of hearing appeals; and it further provided, "Any person dissatisfied or aggrieved by the assessment, or any change thereof, may appeal to the board of revision of taxes and *be heard at the time and place fixed in the notice.*" (Italics supplied). The Act of June 27, 1939, P. L. 1199, (effective on its enactment) which repealed the Act of 1937, supra, specifically provides for the assessment of personal property made taxable by the Act of June 17, 1913, P. L. 507, and for the supervision and revision of such assessments by the board, and imposes on the board the duty to give such notice as the board shall consider reasonable of such assessments and of the time for appeal therefrom; and sections 14 and 15 provide:

"Section 14. Any person aggrieved by any assessment *as the same shall be fixed following revision of assessments by the board,* may file an appeal therefrom with the board. Appeals from real estate assessments shall be filed on or before the first Monday of October. Other appeals shall be filed within the time fixed by law, or in cases in which no time is provided by law, within such time as the board shall prescribe. *The board shall set a time or times at which it shall hear all appeals which have been properly filed.* The board shall either affirm the assessment or shall make such

revision thereof as shall appear to the board to be just and reasonable. The board shall complete its hearings of appeals and shall dispose of all appeals before it as promptly as possible. (Italics supplied).

"Section 15. Any person aggrieved by the disposition made by the board of any appeal may file a petition for review of the assessment in the court of common pleas of the county and may appeal from the decision made thereon by the court of common pleas to the Supreme or Superior Courts, as is now provided by law."

The law does not require that notice shall be given the taxpayer of his personal property assessment and of the time and place for appeal unless the amount or value returned by him for taxation should be altered or revised (sec. 510 of the Act of May 22, 1933, P. L. 853, p. 875), for he has full knowledge of the return made by himself. If, however, any mistake was made by him in his return of taxable personal property or if the amount or value returned by him has been revised and increased by the board it is his duty to appeal therefrom to the board, within the time prescribed and advertised by the board for such appeals [1]; and if he feels aggrieved by the disposition made of his appeal by the board he may then file a petition in the court of common pleas for an appeal and review of the assessment, within the time fixed for such action [2], and from the

---

[1] Section 16 of the Act of April 15, 1834, P. L. 509, permitting appeals at any subsequent time when the commissioners were in session "previous to the payment of the tax", was repealed by the General County Assessment Law of May 22, 1933, P. L. 853; and section 517 of that Act which supplied the repealed section does not include within its provisions the 'Board of revision of taxes' which is the designation (Art. I, sec. 102) for "the board of revision of taxes in counties of the first class"; and the provision was not written into either the Act of April 28, 1937, supra, or the Act of June 27, 1939, supra.

[2] Section 518 of the Act of May 22, 1933, P. L. 853, known as "The General County Assessment Law" (amended in 1935, see P. L. 1935, pp. 674 and 1007) provides for an appeal from the

480

decision of that court he may appeal to the proper appellate court as provided by law.

It is clear that the law contemplates that persons who are for any reason dissatisfied with the personal property tax assessed against them and who consequently feel themselves aggrieved thereby must first *appeal to the board of revision* from such assessment. This is a condition precedent to their obtaining any relief either from the board or the courts. It applies to assessments of personal property no less than assessments of real estate. The only difference between them is the time within which the appeal to the board must be taken. As to real estate assessments, the appeal must be filed with the board on or before the first Monday of October. As to other assessments, it must be filed "within the time fixed by law, or in cases where no time is provided by law, within such time as the board shall prescribe." There is no fixed time provided by law for the filing of appeals from assessments of personal property under the Act of 1913 and its amendments and supplements; hence the time for filing the appeal is governed by the rule or regulation of the board prescribing the time for appeals, which is duly advertised each year.

Notwithstanding the duty to appeal to the board thus resting upon these trustees, if following the decision of the Supreme Court in *Dorrance's Estate,* supra, they deemed that the return of personal property filed by them for taxation was erroneous, they took no appeal. In fact they did nothing until the last of November or the beginning of December, when the time for filing an appeal with the board had expired and after the Act of June 27, 1939, supra, had been in force for five months; and then they filed an application to *correct*

board of revision of taxes to the court of common pleas by petition filed within sixty days after the board has held the appeal provided for by act of assembly and acted on the assessment and valuation appealed from.

the personal property assessment by *striking off the entire assessment* on the ground that under the decision in *Dorrance's Estate,* 333 Pa. 162, 3 A. 2d 682, it was unnecessary for them to file a return. We say they did *nothing* until November or December, 1939, because we do not consider the undated notation [3] made by Mr. Joy on the original return *sometime after* it was filed among the public records,—the date when it was done, does not appear—and which it was not shown was brought to the attention of the board until after the application for correction of the personal property assessment was filed—to have any force or effect whatever.

The board of revision of taxes on December 15, 1939 refused to strike off the said personal property assessment for the year 1939 and so notified Mr. Joy on December 20, 1939.

From this action the trustees on January 19, 1940 appealed to the court of common pleas, which after a hearing filed its adjudication and decree nisi on May 23, 1940 sustaining the appeal and setting aside the assessment.

Exceptions filed by the city to the adjudication and decree nisi were dismissed and final decree entered on July 1, 1940, from which the city appealed to this court.

We are of opinion that the appeal should have been dismissed by the court of common pleas for failure of the trustees to comply with the provisions of the law requiring an appeal to the board of revision of taxes within the time fixed and advertised by the board.

In *Dougherty's Appeal,* 321 Pa. 170, 183 A. 920, where a property owner presented a petition to the board of revision of taxes, after the time for appealing

---

[3] "This taxpayer claims total exemption from the personal property tax under a recent decision of the Pennsylvania Supreme Court.                Charles B. Joy, Trustee."

No mention of it was made in the *first* Application for Correction of Personal Property Assessment filed by the trustees.

482

to the board from the assessment of real estate (Act of May 13, 1856, P. L. 567, section 7) had expired, asking the board to reduce and vacate the assessed valuation of certain properties and allow the exemption claimed (See *Dougherty v. Phila.*, 314 Pa. 298, 171 A. 583) for the years 1933 and 1934, which was refused by the board, an appeal from that decision to the court of common pleas was dismissed because the petition to the board was filed too late; and the action of the court below was affirmed by the Supreme Court in a Per Curiam opinion. Somewhat along the same line are *Pittsburgh School Dist. et al. v. E. S. S. Land Co.*, 140 Pa. Superior Ct. 590, 594-5, 14 A. 2d 619; *Phila. v. Phillips*, 65 Pa. Superior Ct. 578. See also, *Phila. v. Kolb*, 288 Pa. 359, 136 A. 239; *Stratford v. Franklin Paper Mills Co.*, 257 Pa. 163, 101 A. 349; *Everitt's App.*, 71 Pa. 216, (when the appeal lay to the Auditor General); *Miller v. Northampton County*, 307 Pa. 550, 558, 162 A. 209; *Graham v. Commrs. of Lawrence County*, 99 Pa. Superior Ct. 245; *Mauch Chunk Twp. Taxpayers' Assn. v. Kern*, 339 Pa. 257, 14 A. 2d 329.

All of the recent cases in this State dealing with the taxation of personal property in the hands of trustees, etc. under the Acts of 1913 and 1935, cited by the court below and the appellee, came before the Supreme Court or this Court in the regular and orderly process of timely appeal to the board of revision of taxes,—or in the case of the State personal property tax assessed under the Act of June 22, 1935, P. L. 414, by petition for reassessment to the Department of Revenue—and appeal from the decision of the board (or department) to the court of common pleas; and appeal therefrom to the proper appellate court. See *Cumberland County v. Lemoyne Trust Co.*, 318 Pa. 85, 178 A. 32; *Erie County v. Sterling et al., Exrs.*, 319 Pa. 568, 181 A. 505; *Dorrance's Est.*, 333 Pa. 162, 3 A. 2d 682; *Griscom's Est.*, 333 Pa. 186, 3 A. 2d 693; *Fidelity-Philadelphia Trust Co. Appeal,*

337 Pa. 34, 10 A. 2d 547; *Leopold Tax Assessment Case,* 118 Pa. Superior Ct. 158, 179 A. 904; *Dixon's Case,* 138 Pa. Superior Ct. 385, 11 A. 2d 169 (where although called an application to correct a supplemental or additional assessment, it was filed within seven days after the additional assessment was made and was, in effect, an appeal. See Record, pp. 2a, 7a).

With this disposition of the case, we need not discuss at great length the contention of the city that the facts in the present case distinguish it from *Dorrance's Est.,* supra, and justify the assessment sought to be corrected. The evidence fails to show any order, direction or intention on the part of the testatrix that her trust estate should be administered in New Jersey. Her estate was constructively in Pennsylvania for settlement and distribution, no matter where the securities were physically kept. When the executors filed the inventory and appraisement in Philadelphia County, they admitted having the securities in their possession within that county. It is of no moment that Mrs. Courlaender's estate, or a large part of it, was at one time included in a trust estate created by her father, and administered in New Jersey; for the trust had terminated before her death and she was in absolute possession of the securities, and their possession followed her domicile, which was in Philadelphia. Mrs. Courlaender was not engaged in any business enterprise in New Jersey, and the fact that her estate included securities of a number of New Jersey corporations is wholly immaterial. It merely subjected those holdings to personal property taxation in Pennsylvania, and the fact that she kept them for safe custody in a New Jersey vault did not affect her liability for taxation. In *Dorrance's Estate* the testator in his will declared that he was a resident of New Jersey and his will was first admitted to probate there. The business which was the source of his great wealth was conducted in that State, and in his will he clearly expressed his intention that the trust estate, which controlled that

business, should be administered there. All this is lacking in the present trust estate. The testatrix did not direct the securities to be held in New Jersey and the trust administered there; she simply gave the trustees permission to leave them there; but the Orphans' Court of Philadelphia County could direct their production and removal to a safe deposit vault in Philadelphia at any time that it deemed it advisable or necessary to do so (Act of June 7, 1917, P. L. 447, sec. 46(b), p. 511). There is no business to be transacted by the trustees but the care and investment of the trust funds and that can be done just as well in the domicile of the decedent, of the life tenant, and of two of the trustees, as in New Jersey, the domicile of the third trustee. While the will *authorizes* the trustees to keep the securities of the trust in New Jersey, "if they so desire," we doubt whether the voluntary exercise of that permission or authority can deprive the County of Philadelphia of the tax imposed by law on the securities of the estate. Our impression is that there are vital distinctions between this case and *Dorrance's Estate,* supra, which justify the tax imposed by the Philadelphia County taxing authorities, but in view of our ruling as above, it is not necessary for us definitely to decide the question in this appeal. See, however, *Fidelity-Philadelphia Trust Co. Appeal,* supra; *Griscom's Est.,* supra; *Thompson's Est.,* 130 Pa. Superior Ct. 263, 197 A. 547.

The first, third, fourth and fifth assignments of error are sustained. The decree is reversed and the appeal from the decision of the board of revision of taxes is dismissed. Costs to be paid by appellees.