## Loyalsock Township School District *v.* Peters, Appellant.

Argued November 13, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*John C. Youngman,* with him *Candor, Youngman & Gibson,* for appellant.

*Charles F. Bidelspacher,* with him *Bidelspacher & Bidelspacher,* for appellee.

OPINION BY ARNOLD, J., March 5, 1946:

The fourth class School District of Loyalsock Township is in the sixth class county of Lycoming.

In the fall of 1939 the township assessor made the triennial assessment and valued the real estate of John Peters, appellant, at $30,000, a reduction of $9000 from the preceding triennial assessment. This assessment was returned to the county commissioners on November 29, 1939.

The school district levied its 1940 school tax and used, as to Peters, the preceding triennial assessment (and the assessment for 1938) of $39,000. Peters paid the tax based on the $30,000 assessment. The school district then entered a municipal tax claim for the full amount of the taxes based on the $39,000 valuation, giving credit for the taxes paid on the basis of the $30,000 assessment, thus seeking to collect the tax levy on $9000, i.e., the difference between the two assessments. Appellant took a rule on the school district to satisfy the claim upon these facts, and appeals from an adverse judgment.

The pertinent legislation is The General County Assessment Law of 1933,[1] 72 P.S. 5020 et seq.[2] Under it the assessor makes his valuations, inter alia, for the school district (sec. 402), and returns the triennial assessment to the county commissioners, acting as a "Board of Revision" (sec. 505) and the aggregate assessments are then published (sec. 502). The commissioners as a board of revision are sworn (sec. 501), and are to equalize and adjust the assessments, raising, lowering or sustaining the valuations of the assessors (sec. 505). A transcript of the assessments so revised is submitted to the assessors before the second Monday of April following, together with a statement of the day of appeal fixed by the commissioners (sec. 507). The assessors give five days' notice to every taxable of the amount of his valuation and the rate of tax, and of the time and place of such appeal; and where the board of revision raised the valuation from that of the assessor it shall give a notice of the increase to the owners (sec. 508). There is no provision for notice to the municipality.

The county commissioners next sit as a board of appeal at the time and place theretofore fixed (secs.

---

[1] The County Assessment Act of 1943, P. L. 571, 72 P.S. 5453.101 was not then in force.

[2] In 72 P.S. beginning at section 5020-101 the numbers following the dash are the same as the section numbers in the statute, and therefore the P.S. sections will not hereafter be cited.

511 and 513), where all persons (including the municipality) may be heard and at which the assessor attends (sec. 512). When the appeals are over and the assessments are determined, the commissioners make duplicates thereof (sec. 514), and certify the same to the school district (sec. 515). The act does not require either the taxable or the municipality to be notified of the action of the board of appeal. An appeal lies to the court of common pleas within sixty days after the board of revision has acted (sec. 518).

This appeal to the common pleas under section 518 is a right of the taxable only, but under section 519 a similar right of appeal is given any municipality. In the instant case no transcript of the valuations was furnished by the county commissioners, and the school district contends that this omission gave it the right to use the preceding triennial assessment. It also argues that if such certified duplicate had been furnished an appeal could or would have been taken to the court of common pleas from the Peters assessment.

We think both of these contentions must fail. Section 515 (limited to third and fourth class school districts) reads: *"In order to enable the board of school directors . . . to assess and levy the necessary school taxes* required by such district each year, the county commissioners . . . shall, on or before the first day of April in each year, . . . furnish to each school district . . . a properly certified duplicate of the last adjusted valuation of all real estate . . . in such school districts . . ."* (Emphasis supplied). The purpose, then, of this section is *not* to give notice to the school district of the final result of the appeals, but to assist it in levying and collecting its taxes. It is no part of the duty of the *taxable* to follow through further than the valuation fixed by the board of appeals, and the taxable is not required to see that "a properly certified duplicate of the last adjusted valuation" is certified to the school district.

But the position of the school district cannot be sustained for another reason. This court decided in *Cour-*

*laender's Estate,* 143 Pa. Superior Ct., 475, 18 A. 2d 494,[3] that a *taxable,* in order to appeal to the common pleas or to the Superior Court had to show, as a condition precedent, an appeal to the board of revision, sitting for appeals. A fortiori, a *municipality* must exhaust its remedy before the board of revision for appeals before appealing to the common pleas.

In the instant case the school district did not appear before the board of revision or attend or complain before the board of appeal. Therefore it could not take an appeal from the action of the county commissioners so sitting, regardless of any certification of the Peters assessment (with others) to the school district, and was deprived of no right by the failure to certify the last adjusted valuations in accordance with section 515.

That the county commissioners acted in accordance with the statute and sat as a board of revision and again as a board of appeals is not controverted by the evidence, and there is a presumption that the public officers performed their duties: *Beacom v. Robison,* 157 Pa. Superior Ct. 515, 521 et seq., 43 A. 2d 640.

The judgment of the court below is reversed and the record remanded with instructions to the court below to direct satisfaction of the municipal tax claim.

---

[3] Allocatur refused by the Supreme Court.